### FISK, WATT & CO. vs. MEAD,

APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

After the dissolution of a partnership, neither of the partners can bind the other
or the firm, without special authority, derived from a new contract between
them. Such a contract is essentially that of mandate.

So where a partner drew a bill of exchange in the name of a firm which had
been dissolved, on one of the partners and waived acceptance and presen-
tation to the drawee: *Held*, that the latter is not bound, or in any way liable
for the payment of said draft.

This is an action by the second endorsor of a bill of ex-

change, against the drawee; which bill is described as having been drawn by B. G. Sims & Co. in liquidation, the 4th day of January, 1836, for $7,961, payable at the Agricultural Bank at Natchez, Mississippi, the 4th July, 1836, to the order of and endorsed by B. G. Sims. The said bill was drawn on the defendant, Cowles Mead; the drawers waiving presentation and *acceptance to the drawee.* The plaintiffs allege they were the owners and holders of said bill, which had been lost or mislaid, but that it had been duly presented for payment, and protested, of which due notice was given to the drawers and endorser. They allege that the said Mead refuses to pay the said bill; and they pray judgment for the amount thereof. This suit commenced by attachment; the parties to the bill all residing in Mississippi.

The defendant denied any liability on account of said bill; and expressly averred that long before its date, the partnership of B. G. Sims & Co. was dissolved, of which the plaintiffs had due notice; that the name of said firm was signed without the authority or consent of this respondent, wherefore he prays that the suit be dismissed.

The evidence showed that the defendant had been a partner of the firm of B. G. Sims & Co., which was dissolved early in 1834, at which time it was largely indebted to the plaintiffs, between whom large dealings had taken place. The draft in question was drawn in 1836, for the balance then due on account to the plaintiffs, by Sims, who conducted the settlement of the old partnership concern, and as liquidating partner; but it did not appear he had any new or special authority to do so.

The learned Judge presiding, considered the lost instrument sued on, as the mere acknowledgment of Sims, the liquidating partner, of the balance of accounts due the plaintiffs by the old firm of B. G. Sims & Co. of which the defendant was a partner; and not as a bill of exchange in the technical sense. There was judgment for the plaintiffs, and the defendant appealed.

*Rawle*, for the plaintiffs.

*Elmore & King*, for the defendant.

*Garland, J.* delivered the opinion of the court.

An affidavit was filed on the 16th of December, 1839, by Glendy Burke, one of the plaintiffs, alleging that Cowles Mead was indebted to plaintiffs in the sum of $7960 10, without any specification of the manner of indebtedness, whether on account, note or draft, and that he resided out of the State. An attachment issued on this affidavit under which one hundred bales of cotton were seized, which, by agreement were delivered to Keyes & Roberts. The next day, a petition was filed by Watt & Burke, styling themselves to be the firm of A. Fisk, Watt & Co., in liquidation, claiming from the defendant the sum mentioned, with interest at 8 per centum from July 4th, 1836. They say they "are holders and owners of a certain bill of exchange for the sum of $7961 10, drawn by B. G. Sims & Co. in liquidation, to the order of and endorsed by B. G. Sims on Cowles Mead, the said drawers waiving acceptance and presentation thereof to said Cowles Mead, the drawee of said bill which is endorsed by A. Fisk, Watt & Co. dated at ——— on the 4th of January, 1836, payable at the Agricultural Bank in Natchez, on the 4th July, 1836," which said bill at maturity was legally demanded, protested for non-payment, and notice of demand and non-payment given to B. G. Sims & Co. They further allege the transfer of the draft and the issuing of the attachment. In the month of April following, a supplemental petition was filed, alleging the loss of the draft, and diligent inquiry and search for it.

The defendant, for answer, says he is not liable for the draft, that long before it was made, the firm of B. G. Sims & Co. was dissolved, of which plaintiffs had notice. That the draft was signed by Sims without authority, and he is not bound by it.

On these pleadings the parties went to trial.

From the evidence, it appears that Sims and Mead were in partnership, and transacted business to a large amount with Fisk, Watt & Co., the partnership was dissolved about the commencement of the year 1834, of which plaintiffs had notice. Fisk, on the 10th of June, 1833, in a letter to defendant, expresses his gratification at the approaching dissolution of the partnership, and gives notice that his house will not continue business with Sims & Co. except in the way of reduction and liquidation. Yet, we find them in the years 1834 and 1835, continuing to deal with Sims, under the partnership style, and in the name of B. G. Sims & Cowles Mead; charging them with large sums paid, remittances made and adding materially to the accounts by charges for commissions, for endorsements and acceptances. The balance apparently due on the account of B. G. Sims & Cowles Mead of $4746 32, is charged to B. G. Sims & Co. the 1st September, 1835, and the draft given in the name of the latter firm on the dormant partner, the acceptance waived by the drawer and protest made for non-payment, without the drawee and defendant having any notice. When the partnership was dissolved, it does not appear that Sims had any particular authority to liquidate its affairs or use the name as drawer or endorser of notes or drafts for that purpose, much less to contract new engagements.

In the case of Peters & Millard vs. Gardere, syndic, 8 La. Rep., 568, it was held, after the dissolution of a firm neither party can bind the other without his authority. That authority must be derived not from their former relations as partners, but from a new contract between them. Such contract is essentially that of mandate.—See also 6 La. Rep., 483; 4 Ibid. 32; Gow on Partnership, 230, 231, et seq. Sims had no authority to bind his partner, there is therefore no legal acknowledgment of the balance of accounts, which plaintiffs claim. As to his demand on the accounts he has not sufficiently established it, even if judgment could be rendered in the present state of the pleadings. But we do not well see how a judgment can be rendered for a balance of account on a

*After the dissolution of a partnership neither of the partners can bind the other, without special authority, derived from a new contract between them. Such a contract is essentially that of mandate.*

*So where a partner drew a bill of exchange in the name of a firm which had been dissolved, on one of the partners and waived acceptance and presentation to the drawee: Held, that the latter is not bound, or in any way liable for the payment of said draft.*

EASTERN Drs.
May, 1841.

petition claiming the amount of a draft alleged to be lost, although it may be, as the Judge of the Commercial Court calls it, "a mongrel Mississippi instrument." We are not disposed to be at all technical, but pleadings should have a reasonable certainty, and some connection exist between the allegations and the evidence.

The judgment of the Commercial Court is therefore annulled, avoided and reversed, and a judgment of non-suit rendered against the plaintiffs, with costs in both courts.